# United States Court of Appeals for the Federal Circuit

05-1069

DEFAULT PROOF CREDIT CARD SYSTEM, INC.,

Plaintiff-Appellant,

v.

HOME DEPOT U.S.A., INC. (doing business as The Home Depot),

Defendant-Appellee,

and

SAM'S EAST, INC. (doing business as Sam's Club),
STARBUCKS COFFEE COMPANY (also known as Starbucks Corporation),
URBAN COFFEE OPPORTUNITIES, LLC (doing business as Starbucks Coffee),
WAL-MART STORES, INC., and
WAL-MART STORES EAST, LP (doing business as Wal-Mart),

Defendants-Appellees.

Raymond P. Niro, Niro, Scavone, Haller & Niro, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was John C. Janka. Of counsel was Sally Wiggins.

Kevin M. Flowers, Marshall, Gerstein & Borun, LLP, of Chicago, Illinois, argued for defendant-appellee Home Depot U.S.A., Inc. With him on the brief was Mark H. Izraelewicz. Of counsel on the brief was Robert B. Dulaney, III, Home Depot U.S.A., Inc., of Atlanta, Georgia.

David E. Sipiora, Townsend and Townsend and Crew LLP, of Denver, Colorado, argued for defendants-appellees Sam's East, Inc., et al. With him on the brief was Kenneth S. Chang.

Appealed from: United States District Court for the Southern District of Florida

Judge Cecilia M. Altonaga

# United States Court of Appeals for the Federal Circuit

05-1069

DEFAULT PROOF CREDIT CARD SYSTEM, INC.,

Plaintiff-Appellant,

v.

HOME DEPOT U.S.A., INC. (doing business as The Home Depot),

Defendant-Appellee,

and

SAM'S EAST, INC. (doing business as Sam's Club),
STARBUCKS COFFEE COMPANY
(also known as Starbucks Corporation),
URBAN COFFEE OPPORTUNITIES, LLC
(doing business as Starbucks Coffee),
WAL-MART STORES, INC., and
WAL-MART STORES EAST, LP (doing business as Wal-Mart),

Defendants-Appellees.

_____

DECIDED:  June 16, 2005

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE and BRYSON, <u>Circuit Judges</u>.

MICHEL, <u>Chief Judge</u>.

Default Proof Credit Card System, Inc. ("Default Proof") appeals the United States District Court for the Southern District of Florida's grant of summary judgment that claim 1 of U.S. Patent No. 6,405,182 ("the '182 patent") is invalid for failure to meet the definiteness requirement of 35 U.S.C. § 112, ¶ 2.  <u>Default Proof Credit Card Sys.,</u>

<u>Inc. v. Home Depot U.S.A., Inc. d/b/a The Home Depot, et al.</u>, No. 03-20094-CIV (S.D. Fla. Sept. 30, 2004). The appeal was submitted for decision following oral argument on May 4, 2005. Because we agree with the district court that the '182 patent discloses no structure corresponding to the "means for dispensing at least one debit card" limitation in claim 1, we affirm.

## BACKGROUND

### I.

The '182 patent, entitled "System for Dispensing Prepaid Debit Cards Through Point-of-Sale Terminals," issued on June 11, 2002, to Vincent Cuervo. The Abstract describes the invention of the '182 patent as pertaining to "Point-of-Sale machines that allow individuals to obtain from participating merchants, 'over-the-counter', prepaid debit cards." '182 patent, Abstract.

A.    <u>Claim 1</u>

The sole independent claim of the '182 patent recites:

<u>A system for dispensing and validating prepaid debit and credit cards</u>, comprising:

A) a point-of-sale assembly including first computer means with associated first storage means that further include first input and output means for entering information from a user pertaining to his or her particulars and the particulars of the transaction in said first storage means, said first input means includes a keypad assembly, a bill acceptance port and a credit/debit card charge assembly and further including means for validating the funds made available through said input means so that a line of credit is computed by said first computer means and stored in said first storage means with a validation signal and a block of information is assembled and ready for transmission;

B) <u>means for dispensing at least one debit card for each transaction</u>, and each of said debit cards including means for storing a unique identification number, and said debit cards being dispensed only

after a first predetermined number of conditions have been met and said validation signal is received from said point of sale assembly; and

C) a remotely located computerized clearing house assembly, including second computer means with associated second storage means, second input and output means for receiving and sending said block of information from and to said point of sale assembly and said second storage means further including data and instructions to process said block of information so that a line of credit is entered for each of said identification numbers.

Id. at col. 3, l. 34 – col. 4, l. 20 (emphases added).

B.     The Specification

The specification of the '182 patent consists of two figures and three columns of text. As the "Background of the Invention" section explains, the patented invention relates to "a system for dispensing prepaid debit cards through computerized point-of-sale (POS) terminals." Id. at col. 1, ll. 13-15. The invention aims to provide "a system that permits a user to acquire such debit or credit cards from widely available Point-of-Sale terminals using cash, debit and/or credit cards, check cards or ATM's [sic] cards." Id. at ll. 45-49.

Figure 1 of the '182 patent, reproduced below, represents the "hardware used in the present invention." Id. at col. 2, ll. 10-11.



As shown in Figure 1, the card purchaser (30) tenders cash or a credit card to the Point-of-Sale or POS terminal (54). The specification describes the structure of the POS terminal as including "basically a keypad with numbers, letters, names, signs, graphics, with a sliding open side" as well as "necessary input and output hardware such as card charges and card debits 58, computer assembly 60 and associated storage assembly 50." Id. at ll. 22-24, ll. 36-38.

The card purchaser must enter certain information required by the card issuer (41). Id. at ll. 54-57. At a minimum, such information includes a personal identification number (PIN) and the maiden name of the purchaser's mother. Id. at ll. 47-54. "The information entered by the debit card purchaser is stored in storage assembly number 50 through computer assembly 60 for consequent transmission to clearinghouse 56, as shown in FIG. 1." Id. at ll. 61-64. Figure 1 also shows a dispenser (40) that distributes the debit card (48). Important to this appeal, the specification teaches that the

"[d]ispenser will [sic] the merchant or the entity or place selling the card, and an issuer will be the entity or financial institution issuing the card. Dispenser 40 is loaded with three or more stacks of debit cards with a digital storage number 46 wherein a unique identifying serial number has been recorded, and identifies [sic] 48." Id. at ll. 29-34.

Figure 2 illustrates the process steps in a typical transaction. Id. at ll. 13-14.



Figure 2 shows the "Validating Data Received And [Debit Card] Dispensed" step of the transaction as occurring within the area designated by a dotted line as 54, the POS terminal.

The specification names U.S. Patent No. 5,696,908 to Muehlberger ("Muehlberger patent") as its "closest reference," and distinguishes it:

> [Muehlberger] does not disclose the use of point-of-sale terminals (POS) to provide an injection on stacked "virgin" debit cards of any selected prepaid amount of funds (line of credit), security information (PINs, passwords, mother's maiden name, etc.). And to include [sic] conditions for the validation and availability of those funds or line of credit.

'182 patent at col. 1, ll. 27-32.

C.    The Prosecution History

The '182 patent issued from Application No. 09/524,496 ("the '496 application"), a continuation-in-part of Application No. 09/128,088 ("the '088 application"), which issued as U.S. Patent No. 6,105,009 ("the '009 patent"). The '009 patent relates to a system for dispensing prepaid debit cards through automatic teller machines or ATMs.

The original '496 application, drafted and filed by Cuervo pro se, included claims 1-7 from the then-pending '088 application. After claims 8-14 were rejected for double patenting, applicant filed a Preliminary Amendment canceling claims 1-7. Applicant, now represented by an attorney, explained:

> [t]he preamble has been changed to clearly indicate that the system claimed is an apparatus. . . . The original figure 1 has been broken down in two figures to separate the hardware from the steps involved in using it.

> The specifications were amended to bring them more in line with the claimed subject matter which basically extends those claims of the allowed parent application to include the use of a point-of-sale assembly (POS) instead of an automatic teller machine (ATM).

Applicant also filed a terminal disclaimer, and distinguished the invention of the pending application from the ATM machine of the now-issued '009 patent:

> An automated teller machine dispenses money through its mechanism in response to a validated transaction. A point-of-sale assembly does not include such a mechanism. Applicant encloses print outs of commercially

05-1069                                                    6

available P.O.S. products (Items 1 and 2) and commercial [sic] available ATM's (Item 3 and 4).

* * *

It is clear that a merchant operates, in the present invention, a P.O.S. assembly to validate a transaction prior to dispensing a card. To that extent, the present claims are broader.

(Emphasis added). The attached printouts included advertising materials for two commercially available POS terminals, the NURIT 2060 and the NURIT 2080.

The Examiner allowed the claims, stating:

the closest prior art to Muehlberger et al. and Peters fails to teach means for storing a unique identification number on each debit card and a remotely located clearing house assembly for receiving and sending the block of information to and from the point of sale assembly, and wherein the clearing house assembly having a second storage means which includes data and instructions to process the block of information so that a line of credit is entered for each of the identification numbers.

II.

Default Proof filed this suit on January 15, 2003, against Home Depot U.S.A., Inc., Sam's East, Inc., Starbucks Coffee Company, Urban Coffee Opportunities, LLC, Wal-Mart Stores, Inc., and Wal-Mart Stores East, LP, asserting that defendants' gift cards (such as the "Starbucks Card") infringed claim 1 of the '182 patent. Defendants filed several motions in the district court. Most pertinent to this appeal are two motions filed by Home Depot U.S.A., Inc. ("Home Depot") on August 13, 2003 — the motion for an order construing claim 1 of the '182 patent and the motion for summary judgment that all claims of the '182 patent are invalid for indefiniteness. The remaining defendants moved to join in Home Depot's invalidity motion on September 12, 2003.

The district court granted summary judgment of invalidity for indefiniteness, concluding that the specification of the '182 patent failed to disclose any structure

corresponding to the "means for dispensing at least one debit card" limitation of claim 1. The district court first determined, and the parties agreed, that the "means for dispensing" limitation was drafted in means-plus-function language of 35 U.S.C. § 112, ¶ 6. The claimed function of the "means for dispensing," the court found, pertained to "distributing or dealing out debit cards to debit card purchasers." Default Proof does not appeal this ruling.

The court then sought to determine what structure was disclosed in the specification that corresponded to the distributing function. Based on the language of claim 1, the specification, including the two figures, and the prosecution history, the district court determined that such a structure — whatever it may be — exists separately from the POS terminal and thus cannot be the POS terminal. The court also declined to rule that the structure corresponding to the "means for dispensing" may include acts by a human being, i.e., a person manually operating the dispensing apparatus: "[t]here is no machine disclosed in the patent specification or file history that performs the dispensing function, alone or in conjunction with a human being. Therefore, even if the merchant were involved in the dispensing process, the other structural element of Default Proof's proposed corresponding structure is missing from the specification." Default Proof, No. 03-20094-CIV, slip op. at 38-39. The court further noted that "the case law precludes a conclusion that a human being is a corresponding structure, or an equivalent to a structure, under 35 U.S.C. § 112, ¶ 6." Id. at 39.

Given the ambiguity in the intrinsic evidence regarding the "dispenser," the court next considered extrinsic evidence, namely, the declaration of Default Proof's expert witness, Thomas A. Gafford. The court focused on Gafford's testimony that the "widely

available Point-of-Sale terminals" disclosed in the specification include at least three alternative corresponding structures: (1) a "kiosk" associated with a POS terminal that sells prepaid telephone cards; (2) a receipt printer peripheral portion of the POS terminal; and (3) the LCD or CRT display peripherals of the POS terminal operated by the "merchant." The district court rejected each of the three, concluding that "[a] review of the intrinsic record negates even the possibility that any of the structures identified by Gafford may be corresponding structures of the 'means for dispensing.'" Id. at 41. None of these devices, the district court reasoned, were mentioned anywhere in the '182 patent. Moreover, none of the commercially available peripherals or attachments cited by applicant during prosecution are associated with the dispensing of debit cards. Accordingly, "[b]ecause there is no suggestion anywhere in the patent (or anywhere else) that any of these structures identified by Gafford can dispense debit cards, the '182 Patent cannot possibly have linked such structures to 'dispensing' debit cards." Id. at 42 (emphasis original). The court acknowledged that the statutory presumption of validity requires proving the lack of corresponding structure by clear and convincing evidence, yet determined that in this case, the intrinsic evidence provided such evidence: "[t]his is simply not a case involving a 'close question of indefiniteness' that should be resolved in favor of the patentee." Id. at 49.

The court thus held claim 1 invalid for indefiniteness, yet declined to hold dependent claims 2 though 7 invalid for the same reason.

After denying the remaining motions pending before it as moot, the district court entered final judgment in favor of defendants on October 14, 2004. Default Proof timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

**DISCUSSION**

I.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On reviewing the grant of summary judgment, we apply the same criteria as did the district court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

"A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." Atmel Corp. v. Information Storage Devices, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citing Personalized Media Communications, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)). Indefiniteness, therefore, like claim construction, is a question of law that we review de novo. Id.

The requirement that the claims "particularly point[] out and distinctly claim[]" the invention is met when a person experienced in the field of the invention would understand the scope of the subject matter that is patented when reading the claim in conjunction with the rest of the specification. S3 Inc. v. nVIDIA Corp., 259 F.3d 1364, 1367 (Fed. Cir. 2001). "Although expert testimony and declarations are useful to confirm that the construed meaning is consistent with the denotation ascribed by those in the field of the art, such extrinsic evidence cannot be used to vary the plain language of the patent document." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1332 (Fed. Cir. 2003) (internal citations omitted).

"[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an

applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc). "The specification must be read as a whole to determine the structure capable of performing the claimed function." Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1379 (Fed. Cir. 2001). A structure disclosed in the specification qualifies as "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. B. Braun Med. v. Abbott Labs., 124 F.3d 1419, 1424 (Fed. Cir. 1997). This duty to link or associate structure to function is the quid pro quo for the convenience of employing § 112, ¶ 6. See O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1583 (Fed. Cir. 1997). "Fulfillment of the § 112, ¶ 6 trade-off cannot be satisfied when there is a total omission of structure." Atmel, 198 F.3d at 1382. While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function. See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1119 (Fed. Cir. 2002).

II.

As an initial matter, the parties agree, and the district court properly determined, that the "means for dispensing" limitation falls within § 112, ¶ 6. The parties also do not challenge the district court's identification of the claimed function as "distributing or dealing out debit cards to debit card purchasers." The sole issue on appeal is whether the district court correctly determined that the specification of the '182 patent fails to disclose any structure corresponding to the claimed function.

Admitting that the '182 patent is not a model of clarity, Default Proof argues that its specification firmly links the function of the "means for dispensing" with the POS terminal. Specifically, Default Proof contends that the specification, including the very title of the patent — "System for Dispensing Prepaid Debit Cards Through Point-of-Sale Terminals" — clearly links the distributing function with the POS terminal. Default Proof also asserts that the district court committed legal error by discounting the only testimony from one of ordinary skill in the art, Mr. Gafford, that the POS terminal provides the structure corresponding to the "means for dispensing."

Defendants respond that the district court carefully considered the entirety of the '182 patent and its prosecution history to find no structure disclosed in the specification linked to or capable of performing the function of distributing debit cards. Defendants further assert that, rather than discount Gafford's testimony, the district court merely declined to rely on those portions of his testimony that it found "unsupported or contradicted by the express language of the written description." Defendants argue that Gafford's testimony is both implausible on its face, because it contradicts the intrinsic record, and legally insufficient to save claim 1 from indefiniteness.

III.

To meet the definiteness requirement, structure disclosed in the specification must be clearly linked to and capable of performing the function claimed by the means-plus-function limitation. The only structure in the '182 patent associated with the function of distributing debit cards is the "dispenser" shown in Figure 1. The specification describes the "dispenser" as "loaded with three or more stacks of debit cards with a digital storage number 46 wherein a unique identifying serial number has

been recorded, and identifies [sic] 48." '182 patent at col. 2, ll. 32-35. No other structural aspects of the "dispenser" are disclosed.

Default Proof does not appear to argue that the term "dispenser" constitutes the corresponding structure. Instead, Default Proof asserts that "certain specific parts" of the POS terminal correspond to the distributing function. This argument fails for two reasons. First, the specification fails to clearly link the POS terminal, or any part thereof, to the distributing function. Second, the specification fails to describe any parts of the POS terminal capable of dispensing debit cards.

## A.

Default Proof points to the title of the patent itself — "System for Dispensing Prepaid Debit Cards Through Point-of-Sale Terminals" — to argue that the specification links the POS terminal with the dispensing function. Other statements in the specification, Default Proof contends, emphasize that link. For example, the specification describes the invention as relating to a "system for dispensing prepaid debit cards through computerized point-of-sale (POS) terminals," id. at col. 1, ll. 14-16 (emphasis added), and speaks of "merchants' point-of-sale terminals (POS) becoming sellers and dispensers of debit cards," id. at ll. 17-20. This is confirmed by Figure 2, Default Proof argues, which shows another embodiment of the invention where the "Validating Data Received and D.C. [debit card] Dispensed" process takes place within the dotted line representing the POS terminal 54.

Unpersuaded by Default Proof's arguments, we agree with the district court that the POS terminal cannot provide structure corresponding to the "means for dispensing." The intrinsic evidence demonstrates that the POS terminal and any structure for

distributing debit cards exist separately. Both the structure and the language of claim 1 indicate that the point-of-sale assembly and dispensing means constitute separate components. The POS assembly is recited in subpart A of claim 1, while the "means for dispensing" are claimed in subpart B. Moreover, subpart B claims "debit cards being dispensed only after . . . said validation signal is received from said point of sale assembly." The dispenser thus distributes the debit card only after receiving a signal from the separate POS assembly. This is illustrated in Figure 1, the "hardware" of the invention, showing a box labeled "P.O.S." above and distinct from the box labeled "dispenser." The POS terminal (or assembly[1]) and any structure that distributes the debit cards of the invention are thus not one and the same.

Default Proof's resort to Figure 2 is also unconvincing. Rather than depict another embodiment of the claimed invention, as Default Proof contends, Figure 2 illustrates the same embodiment as Figure 1. Indeed, the patentee told the PTO during prosecution that "[t]he original figure 1 has been broken down into two figures to separate hardware from the steps involved in using it." More importantly, Figure 2 appears to contradict the language of claim 1 and the depiction of the "hardware" in Figure 1. To the extent that Figure 2 illustrates process rather than structure and conflicts with other intrinsic evidence, we give it little probative value, as did the district court.

Because the evidence intrinsic to the '182 patent clearly establishes that the POS terminal does not constitute corresponding structure for the "means for dispensing," specific parts of the POS terminal also do not constitute such structure. Default Proof's

---

[1]     The two terms appear to be used interchangeably throughout the '182 patent.

arguments that the structure corresponding to the "means for dispensing" can entail human (or "merchant") participation or a human being manually operating an apparatus, are equally misplaced. Given that a human being cannot constitute a "means," see In re Prater, 415 F.2d 1393, 1398 (CCPA 1969), Default Proof's arguments merely beg the question of what structure the human being operates to perform the function of distributing the prepaid debit cards.

B.

Default Proof's argument that certain parts of the POS terminal constitute the structure corresponding to the "means for dispensing" fails for another reason — none of these parts are described in the specification. Default Proof contends that these aspects of the POS terminal need not be expressly described in the specification, as they were well known in the art. To this end, Default Proof complains that the district court erred by discounting Gafford's uncontroverted testimony, the only testimony from the perspective of a skilled artisan.[2]

Gafford testified that the POS terminal includes at least three alternative structures corresponding to the "means for dispensing": (1) a "kiosk" associated with the POS terminal that sells prepaid telephone cards, such as the one described in the Muehlberger patent; (2) the receipt printer peripheral portion of the POS terminal; or (3)

---

[2] Rather than improperly "discount" Gafford's testimony, the district court expressly considered Mr. Gafford's testimony in determining "whether a person of ordinary skill in the relevant art would understand that a corresponding structure [to the 'means for dispensing'] is disclosed in the specification." Default Proof, No. 03-20094-CIV, slip op. at 31. Recognizing, however, that "[i]t is not proper to look to the knowledge of one skilled in the art apart from and unconnected to the disclosure of the patent," Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1211-12 (Fed. Cir. 2003), the court chose not to rely on those portions of Gafford's testimony that were "either unsupported or contradicted by the express language of the written description. . . ." Id. We find no error in the court's methodology.

the LCD or CRT display peripherals of the POS terminal operated by the "merchant." None of these alternative structures, however, form part of the description of the POS terminal in the specification. Instead, the specification describes certain aspects of the POS terminal, but omits any mention of parts capable of dispensing debit cards. The specification merely teaches that the POS terminal includes "a keypad with numbers, letters, names, signs, graphics, with a sliding open side" as well as "necessary input and output hardware such as card charges and card debits 58, computer assembly 60 and associated storage assembly 50." '182 patent at col. 2, ll. 20-23 and ll. 35-38. None of the terms adduced by Gafford — kiosk, printer, peripheral, LCD or CRT — even appear in the '182 specification.

The "kiosk" identified by Gafford cannot constitute structure for the "means for dispensing." Indeed, even though Gafford declared that he understood the Muehlberger patent to disclose such kiosks, the term "kiosk" does not even appear in the Muehlberger patent. Even if Muehlberger did disclose a "kiosk," however, material incorporated by reference cannot provide the corresponding structure necessary to satisfy the definiteness requirement for a means-plus-function clause. See Atmel, 198 F.3d at 1381. The inquiry under § 112, ¶ 2, does not turn on whether a patentee has "incorporated by reference" material into the specification relating to structure, but instead asks first "whether structure is described in specification, and, if so, whether one skilled in the art would identify the structure from that description." Id. Gafford fails to explain how he gleaned the term "kiosk" from the specification of the '182 patent, or, for that matter, from the Muehlberger patent. His declaration also does not explain that such a "kiosk" was well known in the art and does not elaborate the details of such a

structure, especially how a "kiosk" would dispense debit cards. The "kiosk," whatever it may be, cannot constitute structure corresponding to the claimed function.

Gafford's second proposed corresponding structure, the receipt printer peripheral of the POS terminal, is also not disclosed in the specification. Gafford declared that after the "predetermined conditions" specified in the patent have been met, "the receipt prints out identifying that the specific gift card number that has been activated is dispensed to the customer. At that point, all the acts performed by the 'corresponding structures' specified by claim 1 are complete." Gafford's testimony is legally insufficient for several reasons. First, Gafford failed to explain that such a printer would have been well known in the art to dispense debit cards. Indeed, while the NURIT 2060 marketing materials submitted by applicants to the PTO during prosecution describe an "[i]mpact dot matrix type printer" for printing "fast and accurate receipts with choice of 1 or 2-ply paper," they in no way associate such a printer with dispensing debit cards or suggest that it would be capable of dispensing a debit card. Second, Gafford did not even attempt to clarify how a receipt printer could be capable of dispensing a debit card.

Additionally, Gafford's conclusion that a receipt printer corresponds to the "means for dispensing" contradicts the teaching of the '182 patent, which describes the dispenser as "loaded with three or more stacks of debit cards." '182 patent at col. 2, ll. 32-33. Again, Gafford's conclusory remarks do not even attempt to reconcile this express description in the patent document with his proposed corresponding structure. The district court committed no error in refusing to rely on statements unsupported, and, in fact, contradicted by the intrinsic record. As this court has repeatedly cautioned,

extrinsic evidence cannot be used to vary the plain language of the patent document. See, e.g., Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed. Cir. 1996).

Finally, Gafford testified that the LCD or CRT display peripherals of the POS terminal constitute alternate structures corresponding to the distributing function, stating that the "merchant operates together with the LCD or CRT display to 'dispense' the debit card." Here too, however, Gafford failed to explain that an LCD or a CRT would have been known in the art to distribute debit cards or capable of distributing such cards, or capable of being "loaded with three or more stacks of debit cards" as taught by the specification.

Because the specification of the '182 patent discloses no structure capable of dispensing cards and Gafford's conclusory testimony cannot compensate for such lack of disclosure, Default Proof's reliance on S3 and Atmel is unavailing. In both cases, the specifications of the patents at issue disclosed some corresponding structure. In S3, the parties agreed that such structure was the "selector" identified in the specification and shown in Figure 2 of the patent. This disclosure was elaborated by expert testimony that "a selector is of well known electronic structure and performs a common electronic function, and is readily implemented from the description in the specification." 259 F.3d at 1371. Similarly, in Atmel, the specification described the "high voltage generator circuit" as structure performing the claimed function and referenced a detailed title of a technical article. The disclosure in the specification was supported by expert testimony that the title "alone was sufficient to indicate to one skilled in the art the

precise structure of the means recited in the specification."[3] 198 F.3d at 1382. Unlike in Atmel, where the title itself contained enough detail to serve as disclosure of precise structure, the title of the '182 patent, along with the rest of the specification, contains no such detail.

In sum, while it is true that the patentee need not disclose details of structures well known in the art, see Atmel, 259 F.3d at 1371, the specification must nonetheless disclose some structure. Stated differently, the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification. Because the specification of the '182 patent discloses no structure corresponding to the claimed function of the "means for dispensing," Default Proof cannot use the declaration of its expert to rewrite the patent's specification. See Omega, 334 F.3d at 1332 ("Yet, Omega submits its expert declarations not to shed light on this field of art, but to rewrite the patent's specification and explicitly provide for the laser splitting device, lenses, and prisms to strike the center of the energy zone. That we cannot accept."). We thus hold claim 1 invalid as indefinite. As we have stated, "[t]he primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." All Dental Prodx LLC v. Advantage Dental

---

[3] The specification taught that "[t]he present invention may include high-voltage generator circuit 34. Known Circuit techniques are used to implement high-voltage circuit 34. See On-Chip High Voltage Generation in NMOS Integrated Circuits Using an Improved Voltage Multiplier Technique, IEEE Journal of Solid State Circuits, Vol[.] SC-11, No. 3, June 1976." 198 F.3d at 1377.

<u>Prods.</u>, 309 F.3d 774, 779-80 (Fed. Cir. 2002). The '182 patent fails to provide such notice and thus fails to fulfill the requirements of section 112, paragraph 2.

## CONCLUSION

Based on the foregoing, we hold claim 1 of the '182 patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2. In that respect, we affirm the district court's grant of summary judgment of invalidity. Because the defendants do not appeal the district court's holding that dependent claims 2 through 7 are not invalid, we leave that portion of the judgment undisturbed. <u>See</u> <u>United States v. Am. Ry. Express Co.</u>, 265 U.S. 425, 435 (1924) ("the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary" without bringing a cross-appeal).

<u>AFFIRMED</u>