Opinion for the court filed by Circuit Judge LINN.
Opinion concurring in part, dissenting in part, and with additional views filed by Circuit Judge REYNA.
PROST, Chief Judge, LOURIE, LINN, DYK, MOORE, O’MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES, Circuit Judges, have joined Part II.C.l. of this opinion.
Opinion dissenting from Part II.C.l. filed by Circuit Judge NEWMAN.
LINN, Circuit Judge.
Richard A. Williamson (‘Williamson”), as trustee for the At Home Corporation Bondholders’ Liquidating Trust, owns U.S. Patent No. 6,155,840 (the “'840 patent”) and appeals from the stipulated final judgment in favor of defendants Citrix Online, LLC; Citrix Systems, Inc.; Microsoft Corporation; Adobe Systems, Inc.; Webex Communications, Inc.; Cisco Webex, LLC; Cisco Systems, Inc.; and International Business Machines Corporation (collectively, “Appellees”). Because the district court erroneously construed the limitations “graphical display representative of a classroom” and “first graphical display comprising ... a classroom region,” we vacate the judgment of non-infringement of claims 1-7 and 17-24 of the '840 patent. Because the district court correctly construed the limitation “distributed learning control module,” we affirm the judgment of invalidity of claims 8-12 of the '840 patent under 35 U.S.C. § 112[2], para. 2. Accordingly, we remand.
I. BACKGROUND
A. The '840 Patent
The '840 patent describes methods and systems for “distributed learning” that utilize industry standard computer hardware and software linked by a network to provide a classroom or auditorium-like meta-' phor — i.e., a “virtual classroom” environment. The objective is to connect one or more presenters with geographically remote audience members. '840 patent col.2 11.10-14. The disclosed inventions purport to provide “the benefits of classroom interaction without the detrimental effects of complicated hardware or software, or the costs and inconvenience of convening in a separate place.” Id. at col.2 11.4-7.
There are three main components of the “distributed learning” system set forth in the '840 patent: (1) a presenter computer, (2) audience member computers, and (3) a distributed learning server. The distributed learning server implements a “virtual classroom” over a computer network, such as the Internet, to facilitate communication and interaction among the presenter and audience members. The presenter computer is used by the presenter to communicate with the audience members and control information that appears on the audience member’s computer screen. Id. at col.4 1.66-col.5 1.2. An audience member’s computer is used to display the presentation and can be used to communicate *1344 with the presenter and other audience members. Id. at col.5 11.11-14.
The '840 patent includes the following three independent claims, with disputed terms highlighted:
1. A method of conducting distributed learning among a plurality of computer systems coupled to a network, the method comprising the steps of:
providing instructions to a first computer system coupled to the network for:
creating a graphical display representative of a classroom;
creating a graphical display illustrating controls for selecting first and second data streams;
creating a first window for displaying the first selected data stream; and
creating a second window for displaying the second selected data stream, wherein
the first and second windows are displayed simultaneously; and providing instructions to a second
computer system coupled to the network for:
creating a graphical display representative of the classroom;
creating a third window for displaying the first selected data stream; and
creating a fourth window for displaying the second selected data stream, wherein
the third and fourth windows are displayed simultaneously.
8. A system for conducting distributed learning among a plurality of computer systems coupled to a network, the system comprising:
a presenter computer system of the plurality of computer systems coupled to the network and comprising:
a content selection control for defining at least one remote streaming data source and for selecting one of the remote streaming data sources for viewing; and
a presenter streaming data viewer for displaying data produced by the selected ■■ remote streaming data source;
an audience member computer system of the plurality of computer systems and coupled to the presenter computer system via the network, the audience member computer system comprising:
an audience member streaming data viewer for displaying the data produced by the selected remote streaming data source; and
a distributed learning server remote from the presenter and audience member computer systems of the plurality of computer systems and coupled to the presenter computer system and the audience member computer system via the network and comprising:
a streaming data module for providing the streaming data from the remote streaming data source selected with the content selection control to the presenter and audience member computer systems; and
a distributed learning control module for receiving communications a distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data module.
17. A distributed learning server for controlling a presenter computer system and an audience member computer system coupled to the distributed learning server via a network, the distributed learning server comprising:
a module for providing a first graphical display on the presenter computer *1345 system, the first graphical display comprising:
a first presenter content selection control for selecting a first source of streaming content representative of graphical information;
a first presenter content display region for displaying the graphical information represented by the streaming content from the first selected source;
a second presenter content selection control for selecting a second source of streaming content representative of graphical information; and a second presenter content display region for displaying the graphical information represented by the streaming content from the second selected source, wherein the first and second presenter content display regions are adapted to display simultaneously; and
a classroom region for representing the audience member computer system coupled to the distributed learning server; and
a module for providing a second graphical display on the audience member computer system, the second graphical display comprising:
a first audience member content display region for displaying the graphical information represented by the streaming content from the first source selected by the content selection control; and
a second audience member content display region for displaying the graphical information represented by the streaming content from the second source selected by the content selection control, wherein the first and second audience member content display regions are adapted to display simultaneously.
Id. at col.10 ll.28-52, col.11 ll.26-62, col.12 11.29-65.
B. Procedural History
Williamson accused Appellees of infringing the '840 patent based on their alleged manufacture, sale, offer for sale, use, and importation of various systems and methods of online collaboration. On March 22, 2011, Williamson filed suit in the United States District Court for the Central District of California specifically asserting infringement of all 24 claims of the '840 patent. On September 4, 2012, the district court issued a claim construction order, construing, inter alia, the following limitations of independent claims 1 and 17: “graphical display representative of a classroom” and “first graphical display comprising ... a classroom region” (collectively, the “graphical display” limitations). The district court held that these terms require “a pictorial map illustrating an at least partially virtual space in which participants can interact, and that identifies the presenter(s) and the audience members) by their locations on the map.”
In its claim construction order, the district court also concluded that the limitation of claim 8, “distributed learning control module,” was a means-plus-function term under 35 U.S.C. § 112, para. 6. The district court then evaluated the specification and concluded that it failed to disclose the necessary algorithms for performing all of the claimed functions. The district court thus held claim 8 and its dependent claims 9-16 invalid as indefinite under § 112, para. 2.
Williamson conceded that under the district court’s claim constructions, none of Appellees’ accused products infringed independent claims 1 and 17 and their respective dependent claims 2-7 and 18-24, and that claims 8-16 were invalid. The parties stipulated to final judgment. Williamson appeals the stipulated entry of judgment, challenging these claim con *1346 struction rulings. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
II. Disoussion
A. Standard of Review
Regarding questions of claim construction, including whether claim language invokes 35 U.S.C. § 112, para. 6, the district court’s determinations based on evidence intrinsic to the patent as well as its ultimate interpretations of the patent claims are legal questions that we review de novo. Teva Pharm. USA, Inc. v. Sandoz, Inc., — U.S. -, 135 S.Ct. 831, 840-41, — L.Ed.2d-(2015). To the extent the district court, in construing the claims, makes underlying findings of fact based on extrinsic evidence, we review such findings of fact for clear error. Id. Because the district court’s claim constructions in this case were based solely on the intrinsic record, the Supreme Court’s recent decision in Teva does not require us to review the district court’s claim construction any differently than under the de novo standard we have long applied. Fenner Invs., Ltd. v. Cellco P’ship, 778 F.3d 1320, 1322 (Fed.Cir.2015) (“When the district court reviews only evidence intrinsic to the patent ..., the judge’s determination will amount solely to a determination of law, and [we] review that construction de novo.” (quoting Teva, 135 S.Ct. at 841)) (internal citations removed).
B. The “graphical display” Limitations
Williamson asserts that the district court erred in its construction of the graphical display terms by improperly importing an extraneous “pictorial map” limitation into the claim. Williamson argues that requiring a “map” unduly narrows the claims to the preferred embodiment disclosed in the written description and that there is no support in the intrinsic record for confining the claims to a “pictorial map” that identifies the location of the participants. Williamson alleges that a proper definition must require the audience members to be able to interact with both the presenter and other audience members. He therefore asserts that the proper construction of the graphical display terms is “a viewable illustration of an at least partially virtual space that allows audience members to interact with both the presenter and other audience members.”
Appellees respond that the district court’s construction correctly limited the claims to a “pictorial map” consistent with the teachings of the written description. According to Appellees, this construction does not import a limitation from the preferred embodiment, but simply reflects the functional aspects of a “classroom” in a manner that is consistent with what the patentee invented and disclosed. Moreover, according to Appellees, it is consistent with the only depiction of a classroom shown in the '840 patent, which shows a pictorial map as a seating chart that identifies the presenters and audience members by their locations on the map.
We agree with Williamson. The district court erred in construing these terms as requiring a “pictorial map.” First, the claim language itself contains no such “pictorial map” limitation. “[I]t is the claims, not the written description, which define the scope of the patent right.” Laitram Corp. v. NEC Corp., 163 F.3d 1342, 1347 (Fed.Cir.1998); see also id. (“[A] court may not import limitations from the written description into the claims.”). While the specification discloses examples and embodiments where the virtual classroom is depicted as a “map” or “seating chart,” nowhere does the specification limit the graphical display to those examples and embodiments. This court has repeatedly “cautioned against limiting the claimed invention to preferred embodi *1347 ments or specific examples in the specification.” Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1328 (Fed.Cir.2002) (quoting cases) (citations omitted).
Here, there is no suggestion in the intrinsic record that the applicant intended the claims to have the limited scope determined by the district court. To the contrary, the embodiments and examples in the specification of classroom metaphors relating to “maps” are consistently described in terms of preference. For example, the specification states that “[t]he classroom metaphor preferably provides a map of the classroom showing the relative relationships among the presenters and audience members.” '840 patent col.2 11.37-39 (emphasis added). In another example, the graphical display of Figure 6 is described as an “exemplary display” on the presenter’s computer. Id. at col.7 11.35-36. That exemplary display includes a window that “preferably provides a seating chart showing the audience members and presenters in the classroom or auditorium.” Id. at col.9 11.5-7 (emphasis added).
The '840 patent defines a classroom as “an at least partially virtual space in which participants can interact.” Id. at col.6 11.5-6. Nothing further is required, and no greater definition is mandated by the language of the claims, the specification, or the prosecution history. As is well settled, the claims must “not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction.” Innova/Pure Water, Inc., v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1117 (Fed.Cir.2004) (internal quotations omitted).
For the foregoing reasons, we conclude that the district court incorrectly construed the graphical display terms to have a “pictorial map” limitation. We therefore vacate the stipulated judgment of non-infringement of claims 1-7 and 17-24. The “graphical display” limitations in claims 1 and 17 are properly construed as “a graphical representation of an at least partially virtual space in which participants can interact.”
C. The “distributed learning control module” Limitation
1. Applicability of 35 U.S.C. § 112, para. 6[3]
Means-plus-function claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112, para. 6, which states:
An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.
In enacting this provision, Congress struck a balance in allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof. See Northrop Grumman Corp. v. *1348 Intel Corp., 325 F.3d 1346, 1350 (Fed.Cir.2003).
To determine whether § 112, para. 6 applies to a claim limitation, our precedent has long recognized the importance of the presence or absence of the word “means.” In Personalized Media Communications, LLC v. International Trade Commission, building upon a line of cases interpreting § 112, para. 6,[4] we stated that the use of the word “means” in a claim element creates a rebuttable presumption that § 112, para. 6 applies. 161 F.3d 696, 703-04 (Fed.Cir.1998) (citing cases). Applying the converse, we stated that the failure to use the word “means” also creates a rebuttable presumption— this time that § 112, para. 6 does not apply. Id. We have not, however, blindly elevated form over substance when evaluating whether a claim limitation invokes § 112, para. 6:
Merely because a named element of a patent claim is followed by the word “means,” however, does not automatically make that element a “means-plus-function” element under 35 U.S.C. § 112, ¶6.... The converse is also true; merely because an element does not include the word “means” does not automatically prevent that element from being construed as a means-plus-function element.
Cole v. Kimberly-Clark Corp., 102 F.3d 524, 531 (Fed.Cir.1996); see also Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1584 (Fed.Cir.1996) (‘We do not mean to suggest that section 112(6) is triggered only if . the claim uses the word ‘means.’ ”).
In making the assessment of whether the limitation in question is a means-plus-function term subject to the strictures of § 112, para. 6, our cases have emphasized that the essential inquiry is not merely the presence or absence of the word “means” but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. Greenberg, 91 F.3d at 1583 (“What is important is ... that the term, as the name for structure, has a reasonably well understood meaning in the art.”). When the claim uses the word “means,” our cases have been consistent in looking to the meaning of the language of the limitation in assessing whether the presumption is overcome. We have also traditionally held that when a claim term lacks the word “means,” the presumption can' be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to “recite! ] sufficiently definite structure” or else recites “function without reciting sufficient structure for performing that function.” Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed.Cir.2000).
In Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358 (Fed.Cir.2004), we applied for the first time a different standard to the presumption flowing from the absence of the word “means” and held that “the presumption flowing from the absence of the term ‘means’ is a strong one that is not readily overcome ” (emphasis added), citing as examples, Al-Site Corp. v. VSI International, Inc., 174 F.3d 1308, 1318-19 (Fed.Cir.1999) and Personalized Media Communications, 161 F.3d at 703-05. A few years later, we reiterated Lighting World’s characterization of the presumption as a “strong one that is not readily overcome” *1349 in Inventio AG v. ThyssenKrupp Elevator Americas Corp., 649 F.3d 1350, 1358 (Fed.Cir.2011). In Flo Healthcare Solutions, LLC v. Kappos, 697 F.3d 1367, 1374 (Fed.Cir.2012), decided just a year after Inven-tio, we raised the bar even further, declaring that “[w]hen the claim drafter has not signaled his intent to invoke § 112, ¶ 6 by using the term ‘means,’ we are unwilling to apply that provision without a showing that the limitation essentially is devoid of anything that can be construed as structure ” (emphasis added), citing Masco Corp. v. United States, 303 F.3d 1316, 1327 (Fed.Cir.2002), a case involving the different term “step for” and the unusual circumstances in which § 112, para. 6 relates to the functional language of a method claim. Recently, in Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1297 (Fed.Cir.2014), we yet again observed that this presumption is “ ‘strong’ and ‘not readily overcome’ ” and noted that, as such, we have “ ‘seldom’ held that a limitation without recitation of ‘means’ is a means-plus-function limitation,” citing Lighting World, 382 F.3d at 1358, 1362, Inventio, 649 F.3d at 1356, and Flo Healthcare, 697 F.3d at 1374. Our opinions in Lighting World, Inventio, Flo Healthcare and Apple have thus established a heightened bar to overcoming the presumption that a limitation expressed in functional language without using the word “means” is not subject to § 112, para. 6.
Our consideration of this case has led us to conclude that such a heightened burden is unjustified and that we should abandon characterizing as “strong” the presumption that a limitation lacking the word “means” is not subject to § 112, para. 6. That characterization is unwarranted, is uncertain in meaning and application, and has the inappropriate practical effect of placing a thumb on what should otherwise be a balanced analytical scale. It has shifted the balance struck by Congress in passing § 112, para. 6 and has resulted in a proliferation of functional claiming untethered to § 112, para. 6 and free of the strictures set forth in the statute. Henceforth, we will apply the presumption as we have done prior to Lighting World, without requiring any heightened evidentiary showing and expressly overrule the characterization of that presumption as “strong.” We also overrule the strict requirement of “a showing that the limitation essentially is devoid of anything that can be construed as structure.”
The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. Greenberg, 91 F.3d at 1583. When a claim term lacks the word “means,” the presumption can be overcome and § 112, para. 6 will apply if the. challenger demonstrates that the claim term fails to “recite sufficiently definite structure” or else recites “function without reciting sufficient structure for performing that function.” Watts, 232 F.3d at 880. The converse presumption remains unaffected: “use of the word ‘means’ creates a presumption that § 112, ¶ 6 applies.” Personalized Media, 161 F.3d at 703.
2. Functional Nature of the Limitation
On appeal, Williamson argues that the district court erred in construing the term “distributed learning control module” as being governed by 35 U.S.C. § 112, para. 6. Williamson contends that the district court failed to give appropriate weight to the “strong” presumption against means-plus-function claiming that attaches to claim terms that do not recite the word “means.” Williamson also argues that the district court wrongly focused its analysis on the word “module” instead of the full term, ignored the detailed support provided in the written de *1350 scription, and misapplied our law by failing to view the term from the perspective of one of ordinary skill in the art.
Appellees respond that the district court properly construed “distributed learning control module” as a means-plus-function claim term despite the absence of the word “means.” Appellees assert that the presumption against means-plus-function claiming was rebutted because “distributed learning control module” does not have a well understood structural meaning in the computer technology field. Appellees note that the “distributed learning control module” limitation is drafted in the same format as a traditional means-plus-function limitation, and merely replaces the term “means” with “nonce” word “module,” thereby connoting a generic “black box” for performing the recited computer-implemented functions. In Appellees’ view, since the term should be treated as a means-plus-function claim term and there is no algorithmic structure for implementing the claimed functions in the written description, the finding of indefiniteness should be affirmed.
We begin with the observation that the claim limitation in question is not merely the introductory phrase “distributed learning control module,” but the entire passage “distributed learning control module for receiving communications transmitted between the presenter and the audience member computer systems and for relaying the communications to an intended receiving computer system and for coordinating the operation of the streaming data modulé.” This passage, as lengthy as it is, is nonetheless in a format consistent with traditional means-plus-function claim limitations. It replaces the term “means” with the term “module” and recites three functions performed by the “distributed learning control module.”
“Module” is a well-known nonce word that can operate as a substitute for “means” in the context of § 112, para. 6. As the district court found, “ ‘module’ is simply a generic description for software or hardware that performs a specified function.” J.A. 31. Generic terms such as “mechanism,” “element,” “device,” and other nonce words that reflect nothing more than verbal constructs may be used in a claim in a manner that is tantamount to using the word “means” because they “typically do not connote sufficiently definite structure” and therefore may invoke § 112, para. 6. Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software, 462 F.3d 1344, 1354 (Fed.Cir.2006); see generally M.P.E.P. § 2181.
Here, the word “module” does not provide any indication of structure because it sets forth the same black box recitation of structure for providing the same specified function as if the term “means” had been used.[5] Indeed, Williamson himself acknowledges that “the term ‘module,’ standing alone is capable of operating as a *1351 ‘nonce word’ substitute for ‘means.’ ” Op. Br. at 43.
The prefix “distributed learning control” does not impart structure into the term “module.” These words do not describe a sufficiently definite structure. Although the “distributed learning control module” is described in a certain level of detail in the written description, the written description fails to impart any structural significance to the term. At bottom, we find nothing in the specification or prosecution history that might léad us to construe that expression as the name of a sufficiently definite structure as to take the overall claim limitation out of the ambit of § 112, para. 6. While Williamson is correct that the presence of modifiers can change the meaning of “module,” the presence of these particular terms does not provide any structural significance to the term “module” in this case.
While portions of the claim do describe certain inputs and outputs at a very high level (e.g., communications between the presenter and audience member computer systems), the claim does not describe how the “distributed learning control module” interacts with other components in the distributed learning control server in a way that might inform the structural character of the limitation-in-question or otherwise impart structure to the “distributed learning control module” as recited in the claim.
Williamson also points to the declaration of Dr. Shukri Souri to show that one of ordinary skill in the art would understand the term “distributed learning control module” to connote structure. The district court did not discuss Dr. Souri’s testimony in its claim construction ruling. We have considered it but do not find it persuasive. Dr. Souri’s declaration, like the claim language and portions of the written description Williamson identifies, fails to describe how the distributed learning control module, by its interaction with the other components in the distributed learning control server, is understood as the name for structure. Dr. Souri also testified that, “as one of ordinary skill in the art, reading the specification, I would know exactly how to program” a computer to perform the recited functions and further testified that structure “could be in software or it could be in hardware.” J.A. 1391 (256:12-258:16). But the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed. See Function Media, L.L.C. v. Google, Inc., 708 F.3d 1310, 1319 (Fed.Cir.2013).
For the foregoing reasons, we conclude that the “distributed learning control module” limitation fails to recite sufficiently definite structure and that the presumption against means-plus-function claiming is rebutted. We therefore agree with the district court that this limitation is subject to the provisions of 35 U.S.C. § 112, para. 6.
3. Disclosure of Corresponding Structure
Having found that the “distributed learning control module” is subject to application of § 112, para. 6, we next determine whether the specification discloses sufficient structure that corresponds to the claimed function. We conclude that it does not.
Construing a means-plus-function claim term is a two-step process. The court must first identify the claimed function. Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed.Cir.2012). Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function. Where there are multiple claimed functions, as we have here, the patentee must disclose adequate corresponding structure to perform *1352 all of the claimed functions. Id. at 1318-19. If the patentee fails to disclose adequate corresponding structure, the claim is indefinite. Id. at 1311-12.
The. district court identified three claimed functions associated with the “distributed learning control module” term: (1) receiving communications transmitted between the presenter and the audience member computer systems; (2) relaying the communications to an intended receiving computer system; and (3) coordinating the operation of the streaming data module. The district court then found that the specification fails to disclose structure corresponding to the “coordinating” function. On appeal, it is undisputed that the claimed “coordinating” function is associated with the “distributed learning control module.” Thus, we must ascertain whether adequate structure corresponding to this function is disclosed in the specification. Id. at 1311.
Structure disclosed in the specification qualifies as “corresponding structure” if the intrinsic evidence clearly links or associates that structure to the function recited in the claim. Id. (citing B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1424 (Fed.Cir.1997)). Even if the specification discloses corresponding structure, the disclosure must be of “adequate” corresponding structure to achieve the claimed function. Id. at 1311-12 (citing In re Donaldson Co., 16 F.3d 1189, 1195 (Fed.Cir.1994) (en banc)). Under 35 U.S.C. § 112, paras. 2 and 6, therefore, if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite. Id. at 1312 (citing AllVoice. Computing PLC v. Nuance Commc’ns, Inc., 504 F.3d 1236, 1241 (Fed.Cir.2007)).
The district court was correct that the specification of the '840 patent fails to disclose corresponding structure. The written description of the '840 patent makes clear that the distributed learning control module cannot be implemented in a general purpose computer, but instead must be implemented in a special purpose computer — a general purpose computer programmed to perform particular functions pursuant to instructions from program software. A special purpose computer is required because the distributed learning control module has specialized functions as outlined in the written description. See, e.g., 840 patent col.5 11.48-64. In cases such as this, involving a claim limitation that is subject to § 112, para. 6 that must be implemented in a special purpose computer, this court has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor. E.g., Aristocrat Techs. Austl. Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008) (citing WMS Gaming, Inc. v. Int’l Game Tech., 184 F.3d 1339 (Fed.Cir.1999)). We require that the specification disclose an algorithm for performing the claimed function. Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed.Cir.2008). The algorithm may be expressed as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure. Noah, 675 F.3d at 1312 (citing Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed.Cir.2008)).
Williamson points to certain disclosures in the specification that, it claims, meet the § 112, para. 6 requirements. Williamson argues that the “distributed learning control module” controls communications among the various computer systems and that the “coordinating” function provides a presenter with streaming media selection functionality. These disclosures, however, are merely functions of the “distributed learning control module.” The specifica *1353 tion does not set forth an algorithm for performing the claimed functions.
Williamson argues that figures 4 and 5 disclose the required algorithm. This is not the case. Figure 4 is a representative display from the presenter computer system under the direction of the “distributed learning control module.” '840 patent col.711.1-3.
[[Image here]]
Id. figure 4. This display includes an address or uniform resource locator or URL field, a channel field, an “add this node” button, and a “back” link. Id. col.7 11.5-7, 13-15, 18-19. This is not a disclosure of an algorithm corresponding to the claimed “coordinating” function; it is a description of a presenter display interface.
Figure 5 similarly fails to disclose an algorithm, as, it is another representative, display on the presenter computer system. Id. col.7 11. 20-24. ■ This display allows the presenter to preview data before presenting it to the audience. Id. col.7 11.32-34.
*1354 [[Image here]]
Id. figure 5. This figure contains a box listing the sources of data and a media window that displays the current feed received from the source of data selected in the list box. Id. eol.7 11.24-28. Again; this figure is a description of a presenter display interface; it is not a disclosure of an algorithm corresponding to the claimed functions. Williamson has failed to point to an adequate disclosure of corresponding structure in the specification.
Williamson points to the declaration of Dr. Souri to show that the '840 patent discloses structure. The testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification. Noah, 675 F.3d at 1312 (quoting Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc., 412 F.3d 1291, 1302 (Fed.Cir.2005)). The prohibition against using expert testimony to create structure where none otherwise exists is a direct consequence of the requirement that the specification adequately disclose corresponding structure. Id. (quoting AllVoice Computing, 504 F.3d at 1240). Thus, the testimony of Dr. Souri cannot create structure where none otherwise exists.
Because the '840 patent fails to disclose any structure corresponding to the “coordinating” function of the “distributed learning control module,” we affirm the judgment that claims 8-16 are invalid for indefiniteness under 35 U.S.C. § 112, para. 2.
ConclusioN
The district court erred in construing the “graphical display representative of a classroom” terms in claims 1-7 and 17-24. The district court did not err in construing the term “distributed learning control module” in claims 8-16 of the '840 patent as a means-plus-function claim term lacking corresponding structure. We therefore vacate the final judgment of non-infringement with respect to claims 1-7 and 17-24 and affirm the final judgment of invalidity of claims 8-16. We remand for further proceedings consistent with this opinion.
*1355 AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED
Costs
Each party shall bear its own costs for this appeal.

. 35 U.S.C. § 112 was amended and subsections were renamed by the America Invents Act, Pub.L. No. 112-29 (“AIA”), which took effect on September 16, 2012. Because the application resulting in the '840 patent was filed before that date, this opinion refers to the pre-AIA version of § 112.

. Because the overruling of prior precedent can only be done by the court en banc, see South Corp. v. United States, 690 F.2d 1368, 1370 n. 2 (Fed.Cir.1982) (en banc), Part II.. C.l. of this opinion has been considered by an en banc court formed of Prost, Chief Judge, Newman, Lourie, Linn, Dyk, Moore, O’Malley, Reyna, Wallach, Taranto, Chen, and Hughes, Circuit Judges.

. See, e.g., Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533 (Fed.Cir.1991); Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580 (Fed.Cir.1996); Cole v. Kimberly-Clark Corp., 102 F.3d 524 (Fed.Cir.1997); Mas-Hamilton Group v. LaGard, Inc., 156 F.3d 1206 (Fed. Cir.1998); Unidynamics Corp. v. Automatic Prods. Int’l, Ltd., 157 F.3d 1311 (Fed.Cir.1998).

. We have addressed the use of the word “module” in a means-plus-function dispute in the unpublished decision Ranpak Corp. v. Storopack, Inc., 168 F.3d 1316, No. 98-1009, 1998 WL 513598 (Fed.Cir. July 15, 1998) (unpublished). In Ranpak, we were presented with two closely related claim terms, a “settable control means,” which indisputably invoked means-plus-function claiming, and a “settable control module.” Id. at *2. In the context of the patent at issue, we found that the word “module” in the term "settable control module” did not connote structure. Id. We came to this conclusion because "module” merely sets forth "the same black box without recitation of structure for providing the same specified function” as did “means.” Id. Since there was no difference in the structural implications of the terms, we held that the presumption against means-plus-function claiming was rebutted and the “settable control module” was properly construed as a means-plus-function term.