NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WSOU INVESTMENTS LLC, DBA BRAZOS LICENSING AND DEVELOPMENT,**
*Plaintiff-Appellant*

**v.**

**GOOGLE LLC,**
*Defendant-Appellee*

---

2022-1066, 2022-1067

---

Appeals from the United States District Court for the Western District of Texas in No. 6:20-cv-00581-ADA, 6:20-cv-00582-ADA, Judge Alan D. Albright.

---

Decided: September 25, 2023

---

BRIAN MATTHEW KOIDE, Koide IP Law PLLC, Arlington, VA, argued for plaintiff-appellant. Also represented by NATHAN K. CUMMINGS; SEAN D. BURDICK, Burdick Patents, PA, Boise, ID.

JENNIFER L. SWIZE, Jones Day, Washington, DC, argued for defendant-appellee. Also represented by JOHN R. BOULE, III, EDWIN GARCIA, TRACY A. STITT; THARAN

GREGORY LANIER, Palo Alto, CA; ISRAEL SASHA MAYERGOYZ, Chicago, IL.

———————————

Before LOURIE, LINN, and STOLL, *Circuit Judges*.

LOURIE, *Circuit Judge*.

WSOU Investments LLC, dba Brazos Licensing and Development ("WSOU") appeals from two final judgments of invalidity of the United States District Court for the Western District of Texas. In *WSOU Investments, LLC dba, Brazos Licensing and Development v. Google LLC*, No. 6:20-CV-00581 (W.D. Tex. 2021), the district court granted a joint stipulation of the parties, holding claims 1 and 16 of U.S. Patent 7,304,563 ("the '563 patent"), among others, invalid as indefinite under the court's claim construction. J.A. 1, 612–15. Similarly, in *WSOU Investments, LLC dba, Brazos Licensing and Development v. Google LLC*, No. 6:20-CV-00582 (W.D. Tex. 2021), the district court granted a joint stipulation of the parties, holding claims 1, 9, 16, and 24 of U.S. Patent 8,238,681 ("the '681 patent") invalid as indefinite under the court's claim construction. J.A. 2, 1257–60. For the reasons articulated below, we *affirm*.

## BACKGROUND

Although WSOU owns both the '563 and '681 patents, the two patents disclose unrelated inventions. We therefore discuss each of the patents in turn, followed by a summary of the district court proceedings.

## I. The '563 Patent

The '563 patent is directed to a mobile communication terminal with an alarm clock facility. '563 patent, Abstract. The claims at issue use two types of alarms. The first type is generated by the mobile communication device initiating a connection to a second network-connected device. *See id.* col. 5 ll. 48–54, col. 7 ll. 1–5. For example, the mobile communication device may call another phone or

turn on a stereo system to generate the first type of alarm. *Id.* col. 5 ll. 22–26. The second type of alarm is signaled locally by the mobile communication device. *See id.* col. 5 ll. 55–58, col. 7 ll. 6–10.

The term at issue in claim 1 is "alerting unit configured to issue an alert," which appears in the claim as follows:

1. A mobile communication terminal, comprising:

a clock configured to maintain an indication of the current time;

a memory configured to store a definition of an alert time; and

an *alerting unit configured to issue an alert* when the current time matches the alert time, the *alerting unit* being configured to issue the alert by initiating a connection to another communication terminal over a network so as to cause that other terminal to locally signal the incidence of the connection incoming thereto,

wherein the *alerting unit* comprises a signaling unit configured to locally signal to a user, and the *alerting unit* is configured to issue the alert by causing the signaling unit to locally signal to the user,

wherein the memory is configured to store an indication of whether the *alerting unit* is configured to issue the alert using the signaling unit, and the *alerting unit* is configured to issue the alert using the signaling unit in accordance with that indication, and

wherein the *alerting unit* is configured to issue the alert by initiating the connection to the other communication terminal at a predetermined time offset from signaling the user using the signaling unit.

*Id.* col. 5 ll. 43–67 (emphases added).

Similarly, the term at issue in claim 16 is "issuing means for issuing an alert," which appears in the claim as follows:

16. An apparatus for alerting a user by means of a mobile communication terminal, the apparatus comprising:

maintaining means for maintaining an indication of the current time;

storing means for storing in a memory a definition of an alert time; and

*issuing means for issuing an alert* when the current time matches the alert time by initiating a connection to another communication terminal over a network so as to cause that other terminal to locally signal the incidence of the connection incoming thereto

wherein the *means for issuing an alert* comprises signaling means for locally signaling to the user,

wherein the *means for issuing an alert* issues the alert by causing the signaling means to locally signal to the user,

wherein the storing means stores an indication of whether the *means for issuing an alert* is to issue the alert using the signaling means, and

wherein the *means for issuing an alert* issues an alert by initiating a connection to the other communication terminal at a predetermined time offset from signaling the user by the signaling means.

*Id.* col. 6 l. 62–col. 8 l. 7 (emphases added).

## II. The '681 Patent

The '681 patent is directed to an autofocus feature in a digital camera. '681 patent, col. 1 ll. 8–12. The autofocus feature separates images into windows of interest ("WOIs"), *id.* col. 6 ll. 22–42, which the patent more specifically refers to as "sub-WOIs," *id.* col. 6 ll. 42–45. The claimed invention further divides each sub-WOI into "a plurality of parts," which are each assigned a "focus value mask." *Id.* col. 12 ll. 53–58, col. 13 ll. 55–60, col. 14 l. 64–col. 15 l. 3, col. 16 ll. 17–22. The invention then requires the execution of an autofocus algorithm, using the assigned focus value masks as inputs, wherein:

> the plurality of parts of the at least one sub-window of interest comprise a first part closest to a center of the at least one sub-window of interest, a third part farthest from the center of the at least one sub-window of interest, and a *second part in between the first part and the second part*, where the first part has a weighted focus value of Value$_1$, the second part has a weighted focus value of Value$_2$, and the third part has a weighted focus value of Value$_3$, where Value$_1$, Value$_2$, and Value$_3$ each represent a rational value assigned to a corresponding focus value.

*Id.* col. 12 l. 60–col. 13 l. 3, col. 13 l. 62–col. 14 l. 5, col. 15 ll. 6–16, col. 16 ll. 24–34 (emphasis added).

## III. District Court Proceedings

WSOU filed suit against Google LLC ("Google") for infringement of fifteen patents owned by WSOU, including the '563 and '681 patents. J.A. 45–71, 684–707. The district court issued a single claim construction order that covered all fifteen cases, J.A. 3–10, and based on the court's constructions, the parties stipulated to final judgments of invalidity for indefiniteness for claims 1 and 16 of the '563 patent and claims 1, 9, 16, and 24 of the '681 patent, among

others, J.A. 1–2, 612–15, 1257–60.  After WSOU appealed, the district court provided a memorandum in support of its claim constructions.  J.A. 638–83.

Regarding the '563 patent, the parties agreed that the "issuing means for issuing an alert" limitation of claim 16 was subject to 35 U.S.C. § 112, ¶ 6.[1]  J.A. 653.  The court determined that the claimed functions of the "issuing means" were (1) "initiating a connection to another communication terminal over a network" and (2) "causing the signaling means to locally signal the user."  J.A. 656 (quoting '563 patent, col. 7 ll. 2–3, 8–10).  As for the first function, the court held that the specification did not provide an adequate structure corresponding to the claimed function, but rather (1) only provided additional functional language, (2) merely disclosed a general-purpose computer, and/or (3) improperly relied on a person of ordinary skill in the art's knowledge as a gap-filler for actual disclosure in the specification.  J.A. 656–57.  As for the second function, the court acknowledged (1) that "the means for issuing an alert" comprises signaling means for locally signaling to the user and (2) that WSOU "point[ed] out structure for locally signaling the user."  J.A. 657.  However, the court found that disclosure of structure was inadequate for "issuing means" because it failed to include structure for "*how the issuing means causes* the signaling means to locally signal the user."  *Id.* (emphasis in original).  The court explained that the issuing means may indeed include the structure for the signaling means; however, additional

---

[1]    The America Invents Act of 2011 changed the numbering of the relevant subsection from "§ 112, ¶ 6" to "§ 112(f)."  Because the substance of the subsection did not change, this decision will refer to the relevant subsection as "§ 112, ¶ 6," in keeping with the numeration at the time of the patent filing.

structure is required to show the steps for causing the signaling means to do so. *Id.*

Additionally, the district court determined that the "alerting unit" limitation of claim 1 was a means-plus-function term subject to 35 U.S.C. § 112, ¶ 6, despite WSOU's arguments to the contrary. J.A. 678–79. After finding that "alerting unit" in claim 1 performed the same two functions as "means for issuing an alert" in claim 16, the court determined that "the term 'unit' is defined only by the function it performs" and that the '563 patent uses the terms "unit," "processor," and "means" interchangeably. J.A. 679. The court then held that the '563 patent failed to disclose sufficient structure for "alerting unit" for the same reasons that it failed to disclose sufficient structure for "means for issuing an alert." J.A. 679–80.

Regarding the '681 patent, the district court determined that the phrase "second part in between the first part and the second part" was indefinite because it was nonsensical. J.A. 650–52. The court noted that the self-contradictory language of that term "does not allow a reader to differentiate between the first instance of 'a second part' from the second," even in the context of the specification and prosecution history. J.A. 651.

WSOU timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

"Regarding questions of claim construction, including whether claim language invokes 35 U.S.C. § 112, [¶] 6, the district court's determinations based on evidence intrinsic to the patent as well as its ultimate interpretations of the patent claims are legal questions that we review de novo." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346 (Fed. Cir. 2015) (en banc) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015)). "Indefiniteness is a question of law that is also reviewed de novo." *Robert*

*Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1098 (Fed. Cir. 2014) (citing *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999)).

We will address the WSOU's arguments regarding the '563 patent first, before considering its arguments concerning the '681 patent.

## I. The '563 Patent

WSOU raises two issues concerning the district court's determinations regarding the '563 patent. First, WSOU argues that the court erred in determining that the "alerting unit configured to issue an alert" limitation of claim 1 was subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. Appellant's Br. at 31–40. Second, WSOU asserts that the '563 patent discloses adequate structure corresponding to the claimed functions performed by the "alerting unit" of claim 1 and the "means for issuing an alert" of claim 16. *Id.* at 40–44. Those issues will be discussed in turn.

### A. The Applicability of 35 U.S.C. § 112, ¶ 6 to "Alerting Unit"

"The first step [of a means-plus-function analysis] is to determine whether a claim limitation is drafted in means-plus-function format, which requires us to construe the limitation to determine whether it connotes sufficiently definite structure to a person of ordinary skill in the art." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022) (citing *Williamson*, 792 F.3d at 1349 ("The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.")). As we have previously explained, "the use of the word 'means' in a claim element creates a rebuttable presumption that § 112, [¶] 6 applies." *Williamson*, 792 F.3d at 1348 (internal citation omitted). The converse also holds true, as "the failure to use the word 'means' also creates a rebuttable

presumption . . . that § 112, [¶] 6 does not apply." *Id.* (internal citation omitted).

As claim 1 here does not include the term "means," the presumption against mean-plus-function treatment applies. To rebut that presumption, Google argues (1) that "'unit' serves as a placeholder for almost anything that can perform a particular function," (2) that the surrounding language in the claim is purely functional and thus provides no structure, and (3) that the specification does not ascribe any structure to "alerting unit," only using that term twice alongside the same purely functional language that appears in the claim. Appellee's Br. at 33–36.

We agree with Google and the district court that the term "unit," in a vacuum, is defined only by the function it performs, much like terms such as "element" or "means." *See* J.A. 679; *see also* M.P.E.P. § 2181 (including "unit for" on its list of "non-structural generic placeholders that may invoke 35 U.S.C. § 112[, ¶ 6]"). A "unit" could be almost anything. Despite WSOU's arguments on the contrary, we also agree that, in the context of claim 1, the terms surrounding and modifying "unit" such as "alerting," "configured to issue an alert," "initiating a connection," and "locally signal" are purely functional and do not connote any structure, much less a "sufficiently definite" structure, as required by *Williamson* and *Dyfan*. None of that language "endows the claimed [term] with a physical or structural component." *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008). Likewise, the instances of "alerting unit" in the specification share that same flaw—the additional surrounding language only indicates additional function, rather than structure.

Furthermore, we agree with the district court's reasoning that "nothing in the patent differentiates ['alerting unit configured to issue an alert' and 'means for issuing an alert']" and that the interchangeable use of "unit" and "means" leads to the conclusion that neither term discloses

sufficient structure.  J.A. 679.  We thus conclude that Google has successfully rebutted the presumption against means-plus-function treatment, as it has "demonstrate[d] that the claim term fails to recite sufficiently definite structure." *Williamson*, 792 F.3d at 1349 (internal citation and quotations omitted).

To the extent that WSOU argues that evidence regarding a skilled artisan is necessary in that analysis, *see* Appellant's Br. at 33–34, it improperly attempts to substitute a skilled artisan's knowledge for the actual disclosure of sufficient structure in the claims or specification.  "[T]he fact that one of skill in the art *could* program a computer to perform the recited functions cannot create structure where none otherwise is disclosed." *Williamson*, 792 F.3d at 1351 (emphasis added) (citing *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013)); *see also Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1299 (Fed. Cir. 2018) ("[N]one of our cases mandate that a party seeking to overcome the presumption against application of § 112, [¶] 6 can only do so by presenting extrinsic evidence that one of ordinary skill would *fail* to understand that a term connotes a definite structure." (emphasis in original)).

Moreover, both parties seem to argue that precedent dictates the outcome of this case, *see* Appellant's Br. at 34–40 (arguing strict adherence to *Dyfan*); Appellee's Br. at 38 (arguing that *Fiber, LLC v. Ciena Corp.*, 792 F. App'x 789 (Fed. Cir. 2019) should apply), but these arguments are of little value given how contextually dependent the first step of the means-plus-function analysis is, as the outcome turns on the specific patent at issue.  Neither *Dyfan* nor *Fiber* discusses the term "unit," much less in the context of the '563 patent.

Accordingly, we affirm the district court's holding that "alerting unit configured to issue an alert" in claim 1 of the

'563 patent is a means-plus-function limitation subject to 35 U.S.C. § 112, ¶ 6.

## B. Disclosure of Corresponding Structure for the Means-Plus-Function Terms in Claims 1 and 16

Pursuant to the foregoing analysis, "alerting unit configured to issue an alert" in claim 1 is a means-plus-function limitation. Furthermore, neither party disputes that "issuing means for issuing an alert" in claim 16 is also claimed in means-plus-function format. Having thus determined that both of those terms are subject to 35 U.S.C. § 112, ¶ 6, we proceed to the second step of the of the means-plus-function analysis, in which we "determine whether the specification discloses sufficient structure that corresponds to the claimed function." *Williamson*, 792 F.3d at 1351.

In making that determination, "[t]he court must first identify the claimed function." *Id.* (internal citation omitted). "Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* "Where there are multiple claimed functions, . . . the patentee must disclose adequate corresponding structure to perform all of the claimed functions." *Id.* at 1351–52 (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318–19 (Fed. Cir. 2012)). We have elaborated that "[w]hile the specification must contain structure linked to claimed means, this is not a high bar." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). However, "[i]t is not enough simply to list a certain structure in the specification; that structure must also be clearly linked to a claimed function in order to be a corresponding structure for that function." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1218 (Fed. Cir. 2003).

In this case, the district court identified the two undisputed claimed functions performed by both the "alerting unit" and the "issuing means for issuing an alert" as "(1)

initiating a connection to another communication terminal over a network; and (2) causing the signaling means to locally signal to the user." J.A. 656, 679–80 (internal citations and quotations omitted). We begin by discussing the first identified claimed function below.

The '563 patent's specification discloses that a "[m]obile phone 1 comprises a central processing unit 10, which controls the operation of the phone in accordance with software stored in a read only memory 11." '563 patent, col. 3 ll. 21–23. Nevertheless, we agree with Google that that passage is merely a general description of the mobile phone depicted in Figure 1. Nothing in that passage or the surrounding language clearly links the disclosed structure, if it is that, to the claimed function of "initiating a connection to another communication terminal over a network." Moreover, even if there were some clear link between that language and the claimed function, we have "consistently required that the structure disclosed in the specification be more than simply a general[-]purpose computer or microprocessor." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008) (quoting *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

Similarly, the '563 patent's specification discloses a "communication subsystem 18," which comprises "an antenna 19 and a communication engine 20." '563 patent, col. 3 ll. 32–35. Although "antenna" may be structural, we agree with Google and the district court that "communication engine" is described with purely functional language. The surrounding language provides that "[t]he communication engine 20 is connected between the antenna and the processor 10." *Id.* col. 3 ll. 35–36. However, that language merely describes the location of the communication engine, rather than what it is or how it operates. The lack of specific structure is confirmed by the disclosure that "[a]t least some functional elements of the communication engine may be implemented on a common chip with one or more

parts of the central processing unit." *Id.* col. 3 ll. 39–42. We therefore agree with the district court's determination that "[s]uch 'high level' disclosure of results to be obtained, but no detail as to how to perform the operation to achieve those results, does not satisfy [§] 112, ¶ 6." J.A. 656 (citing *In re Aoyama*, 656 F.3d 1293, 1298 (Fed. Cir. 2011)).

Even though the '563 patent mentions two exemplary communication protocols, neither provides sufficient structure corresponding to the claimed function. In particular, the specification discloses that "[t]he mobile phone may be operable in accordance with *any* suitable communication protocol. Examples include GSM and 3G (UMTS)." '563 patent, col. 3 ll. 45–47 (emphasis added). Google and the district court rely on *Biomedino*, properly characterizing that communication protocol language as "a bare statement that known techniques or methods can be used [that] does not disclose structure." 490 F.3d at 953; J.A. 657. "The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure." *Id.* In any case, the communication protocol language in the '563 patent merely corresponds to the general operation of the mobile phone and is not "clearly linked" to the claimed function of "initiating a connection to another communication terminal over a network."

The '563 patent's specification contains one additional passage relevant to this issue:

> The . . . alarm is an alarm generated by means of a call to another phone. In the alarm setting mode the user can select a telephone number for use in the second type of alarm. The telephone number is stored in non-volatile memory 21. . . . When the alarm is active and the clock matches the entered time and optionally date the processor generates

the alarm of the second type by calling the telephone number.

'563 patent, col. 4 ll. 9–20. However, Google correctly notes that that language is also not "clearly linked" to the claimed function. That leaves a skilled artisan uncertain whether the "processor," the "communication engine," or some other component (or combination thereof) described in the specification is the structure corresponding to the claimed function of "initiating a connection to another communication terminal over a network."

To the extent that WSOU argues that the "interpretation of what is disclosed in the specification must be made in the light of knowledge of one skilled in the art," Appellant's Br. at 43 (quoting *Biomedino*, 490 F.3d at 950), it invites us to improperly use the knowledge of a skilled artisan as a gap-filler, rather than a lens for interpretation, *see Function Media*, 708 F.3d at 1319 ("Having failed to provide any disclosure of the structure for the [claimed] function, [the patentee] cannot rely on the knowledge of one skilled in the art to fill in the gaps."). WSOU argues that a skilled artisan would "understand the structure involved with a mobile phone using GSM and/or 3G (UMTS) mobile telephony standard(s)" and "know how to program the processor to have the phone place a call with GSM/3G (UMTS) mobile telephony chip." Appellant's Br. at 43. However, those arguments are irrelevant as "[t]he indefiniteness inquiry is concerned with whether the bounds of the invention are sufficiently demarcated, not with whether one of ordinary skill in the art may find a way to practice the invention." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012) (citing *Aristocrat*, 521 F.3d at 1337). "[T]he understanding of one skilled in the art in no way relieves the patentee of adequately disclosing sufficient structure in the specification." *Atmel*, 198 F.3d at 1380.

Because we have determined that the '563 patent's specification does not disclose sufficient structure that corresponds to the first claimed function performed by the "alerting unit configured to issue an alert" and the "issuing means for issuing an alert," we need not discuss the second claimed function, as "the patentee must disclose adequate corresponding structure to perform *all* of the claimed functions." *Williamson*, 792 F.3d at 1351–52 (emphasis added) (internal citation omitted). In the context of a claim governed by § 112, ¶ 6, "if the patentee fails to disclose adequate corresponding structure, the claim is indefinite." *Id.* at 1352 (citing *Noah Sys.*, 675 F.3d at 1311–12). Accordingly, we affirm the district court's determination that claims 1 and 16 of the '563 patent are invalid as indefinite.

## II. The '681 Patent

WSOU raises two issues concerning the district court's determination regarding the '681 patent. First, WSOU argues that the court erred in determining that claims 1, 9, 16, and 24 of the '681 patent were invalid as indefinite based on the nonsensicality of the claim limitation "second part in between the first part and the second part." Appellant's Br. at 45–56. Second, WSOU asserts that the '681 patent discloses adequate structure corresponding to the claimed function performed by the "means for assigning" limitation of claim 24. *Id.* at 56–62. We begin by discussing the "second part" claim limitation.

A patent is invalid as indefinite if "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). One circumstance in which claims are indefinite is where the claims, as properly construed, are nonsensical. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1367 (Fed. Cir. 2016) ("The claims are nonsensical in the way a claim to

extracting orange juice from apples would be, and are thus indefinite." (internal citation omitted)). Generally, the terms of a claim are properly construed when they are given their ordinary and customary meaning, which is the meaning that the terms would have to a skilled artisan at the time of invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005).

Neither party disputes that "second part in between the first part and the second part" should be given its plain and ordinary meaning, as understood by a skilled artisan in light of the specification and prosecution history. However, Google contends that the plain and ordinary meaning of the claim is nonsensical, given the self-referential nature of a "second part" existing "in between the first part" and itself. Appellee's Br. at 47. Google notes that the specification and claims use that exact phrasing on multiple occasions, leading one to believe that it was not a mere typographical error or mistake. *Id.* at 47–48. Conversely, WSOU insists that the specification and prosecution history imparts a plain and ordinary meaning of "second part in between [the boundary of] the first part and [the outer boundary of] the second part" to a skilled artisan. Appellant's Br. at 48 (bracketed portions indicating WSOU's proposed clarifications to the claim language). WSOU relies largely on Figure 3 of the '681 patent, *id.* at 47–49, and the examiner's allowance of the contested language in an office action during prosecution, *id.* at 49–51.

Our examination of the '681 patent's specification matches that of the district court. The self-contradictory language of the limitation renders the claims indefinite because it "does not allow a reader to differentiate the first instance of 'a second part' from the second." J.A. 651. Google is correct that "[t]he specification provides no further explanation to escape the nonsensical [plain and ordinary meaning of the] limitation." Appellee's Br. at 47. Although WSOU points us to Figure 3, nothing in the figure supports importing WSOU's "boundary" language into

the claim limitation.  In fact, the term "boundary" does not appear whatsoever in the '681 patent's specification.

Likewise, our analysis of the '681 patent's prosecution history mirrors that of the district court.  The office action cited by WSOU was unrelated to any indefiniteness rejection and instead dealt with rejected dependent claims that would become allowable if written in independent form. J.A. 224.  Furthermore, although the contested language was listed in the examiner's reasons for allowance, the language was not "introduced" by the examiner as WSOU implies.  *See* Appellant's Br. at 51.  Indeed, WSOU admits that the language appeared in the originally filed claim. *Id.* at 50.  We agree with the district court's rejection of WSOU's argument on the basis that "if the [c]ourt were to accept this argument, no party could ever raise an indefiniteness challenge because every claim term ever held indefinite was originally approved by a patent examiner." J.A. 652 (quoting *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 2016 WL 6832623, at *16 (D. Minn. 2016)).

As we have explained repeatedly and consistently, "courts may not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (internal citations omitted).  "Even 'a nonsensical result does not require the court to redraft the claims of the [patent at issue]. Rather, where as here, [when] claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated.'"  *Id.* (citing *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)).  "[W]e do not redraft claims to contradict their plain language in order to avoid a nonsensical result." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 782 (Fed. Cir. 2010) (internal citations omitted).  Following that longstanding practice, we decline to redraft the

claim limitation at issue to include WSOU's additional "boundary" language.

To the extent that WSOU again emphasizes the lack of evidence regarding a skilled artisan's knowledge in this case, we again decline to accept that argument. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In this case, we are not persuaded by WSOU's argument that a skilled artisan's knowledge would alter the plain and ordinary meaning of the "commonly understood" language of "second part in between the first part and the second part," even in the context of the '681 patent's specification and prosecution history.

Accordingly, we affirm the district court's holding that claims 1, 9, 16, and 24 of the '681 patent are invalid as indefinite. We therefore need not reach the parties' arguments concerning the means-plus-function limitation of claim 24, as that claim includes the same "second part" language that was discussed in the preceding analysis.

## CONCLUSION

We have considered WSOU's remaining arguments but find them unpersuasive. For the foregoing reasons, the decision of the district court is *affirmed*.

## AFFIRMED